THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | Case No. 2:13CR00749 DS |
| Plaintiff, ) | | |
| vs. ) | | MEMORANDUM DECISION |
| ) | | AND ORDER |
| MICHAEL VINCENT GOODWIN, ) | | |
| Defendant. | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Defendant Michael Vincent Goodwin has moved to suppress evidence obtained as a result of his detention and arrest on December 5, 2012, which occurred in the parking lot at the Newgate Mall located in Ogden, Utah. Mr. Goodwin requests suppression of "all evidence obtained as a result of his unlawful detention, arrest, and subsequent booking into jail". Mot. Suppress (Doc. #39) at 1. Mr. Goodwin also moves to suppress "all evidence obtained as a result of a traffic stop of a vehicle [ on July 23, 2013] in which he was alleged to be the driver, his continued detention, and the ultimate search of his vehicle and a hotel room he was residing in." Mot. Suppress (Doc. # 35) at 1. An evidentiary hearing was held, followed by post trial briefing.

These are the material facts. On December 5, 2012, Ogden City, Utah, Police Officer Ryan Call, a member of the crime reduction unit, was working a plainclothes detail at the Newgate Mall looking for shoplifters. Officer Call paid a visit to the Sears loss prevention office to inquire if any suspicious behavior had been observed. The

Sears loss prevention staff pointed out two males who appeared to be shopping together. Officer Call observed live security video of the two men, who were later identified as Michael Goodwin and Troy Manning. He watched as Manning looked at random items for a "split second" before placing them in a shopping cart without much thought or consideration of price. Manning was the one pushing the cart and the one placing the items in the cart. Defendant Goodwin and Manning would split off and then come back together.

Officer Call continued to watch as Manning went to a checkout counter. He pulled out a single loose-leaf like check from his pocket, filled it out and handed the check to the cashier. The Cashier subsequently returned the check to Manning who was moving his hands around and appeared to Officer Call to look confused. A loss prevention associate contacted the cashier and confirmed that the check had been declined. Defendant Goodwin was not with Manning at the beginning of the checkout transaction, but at some point during the transaction "walked up to" Manning and "was kind of in the area".

As Defendant Goodwin and Manning departed, Officer Call decided to approach them and talk with them regarding what he believed was an attempt to pass a bad check. Officer Call caught up with them in the parking lot, identified himself, showed his badge and stated that he wanted to talk to them about the check. Defendant and Manning turned around to face Officer Call, but they continued slowly walking backwards. Officer Call told them that they needed to stop. Manning began putting the check into a zippered money bag.

Officer Call stated a second time that he needed to talk to them about the check. Defendant Goodwin responded, "No, I don't", and then both Goodwin and Manning started running. Because Defendant Goodwin was closer to him, Officer Call elected to pursue Defendant Goodwin shouting "Police", "Stop".

After running for less than a minute, Officer Call tackled Defendant Goodwin to the ground and tried to pull his hands back to be handcuffed. Defendant repeatedly swung his elbows at Officer Call, who struck Defendant in the side of the head. Defendant Goodwin continued to swing his elbows at Officer Call until the Officer struck Defendant a second time. Officer Call was then able to place handcuffs on Defendant and he was transported and booked into jail for assault on a police officer.

Approximately six months later, just prior to 9:00 p.m. on July 23, 2013, Officer Call, while on patrol with Officer John Lobaido, had occasion to see Defendant in driving a vehicle which was stopped at a red light. Officer Call ran a warrant check and learned that Defendant was driving on a suspended license. Officer Call pulled Defendant over and advised him that he was being stopped for driving with a suspended license. Defendant was arrested and placed in the officers' patrol car.

Pursuant to police practice, the vehicle Defendant was driving was impounded and an inventory search performed. While performing the inventory search, Officers Call and Lobaido found items that appeared to be evidence of illegal activity: (1) an envelop containing what appeared to be fraudulent checks, (2) a bag containing what was suspected to be forgery equipment, (3) another man's ID inside of Defendant's wallet, (4) a checkbook that belonged to someone other than Defendant, and (5) a bag of what was suspected to be crystal methamphetamine.

## II.  DISCUSSION

"The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures."  *United States v. Guardado*, 699 F. 3d 1220, 1222 (10th Cir. 2012).  Mr. Goodwin asserts that his Fourth Amendment rights were violated based on the following grounds:  "(I) he was subjected to an investigatory detention without reasonable suspicion that he had committed, or was about to commit, a crime; (ii) he was arrested without probable cause ; and (iii) an exploitation of his illegal arrest led to evidence that was the fruit of the poisonous tree."  Mem. Supp. at 1.

For the reasons that follow, the Court concludes that Officer Call's seizure of Defendant Goodwin was lawful initially based on reasonable suspicion, and lawful subsequently based on probable cause.  It follows from those conclusions, that Defendant's  poisonous tree position is without merit.

**A.  Investigatory Detention.**

Mr. Goodwin urges that he was subject to an investigatory detention without reasonable suspicion that he had, or was about to, commit a crime.

Police may constitutionally "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  A *Terry* stop is considered a seizure under the Fourth Amendment.  *United States v. Burleson*, 657 F.3d 1040, 1044-45 (10th Cir. 2011).  A stop is reasonable if it is justified at its start and reasonably related in scope to the circumstances which justified the stop in the first place.  *Terry, 392* U.S. at 20. A stop is justified if the "specific and articulable

facts and rational inferences drawn from those facts give rise to a reasonable suspicion [that] a person has or is committing a crime." *United States v. Werking*, 915 F.2d 1404, 1407 (10th Cir. 1990). When discerning whether a reasonable suspicion exists, a court is to "consider the totality of circumstances" and "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Sanchez*, 519 F.3d 1208, 1215 (10th Cir.)(internal quotation marks and citation omitted), *cert. denied*, 55 U.S. 870 (2008). "Direct evidence of a specific, particular crime is unnecessary. The Fourth Amendment merely requires commonsense judgments and reasonable inferences. Even conduct that is lawful, when observed through the prism of experience and considered in light of the circumstances, may warrant further investigation." *Guardado*, 699 F. 3d at 1225 (citations omitted).

As the Government notes, the facts should be analyzed as they existed at the moment Officer Call took Defendant to the ground because there was no seizure of Defendant prior to that moment. For Fourth Amendment purposes, Defendant Goodwin was seized when Officer Call tackled him. *Guardado*, 699 F. 3d at 1223. *See also Brendlin v. California*, 551 U.S. 249, 254 (2007)(internal quotation marks and citations omitted) ("A person is seized by the police ... when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied.").

Under the totality of circumstances, the Court concludes that at the time Officer Call tackled Defendant, the Officer had an objectively reasonable suspicion that Defendant and Manning were working together and that they were involved in criminal activity. Thus he was entitled to make a *Terry* stop. Defendant and Manning's behavior

5

caught the attention of Sears' loss prevention staff. Officer Call personally observed Manning randomly select items with only cursory inspection of the merchandise as well as the price of each item, before Manning put those items in a shopping cart. Defendant and Manning were together, then one would split off, and then they would come back together. At some point while Manning was at the checkout counter, Defendant was in the area and walked up to Manning. After the check was declined, no alternative form of payment was offered. Most significantly, when Officer Call approached the men in the parking lot and identified himself as a police officer, both men ran away. Although evasive behavior is not determinative of wrongdoing, it can certainly suggest criminal conduct. *Guardado*, 669 F. 3d at 1224.

Even though Officer Call had sufficient reasonable suspicion of criminal activity to initiate a *Terry* Stop, due to Defendant's flight he was unable to carry out the stop without using physical force to stop Defendant. An officer may, under appropriate circumstances, use force during a *Terry* stop and the mere use of force will not necessarily transform detention into an arrest. *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012). On the issue of force that may be employed during a *Terry* stop the Tenth Circuit instructs as follows.

> [O]fficers may use force during a *Terry*-type detention to the extent that such steps are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop. Under certain circumstances, the steps officers may permissibly take to protect their safety include drawing their weapons, placing a suspect in handcuffs, or forcing a suspect to the ground. In evaluating whether the precautionary steps taken by an officer were reasonable, the standard is objective–would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate. Determining whether the force used to effect a

> particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. This test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Further, [t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Moreover, [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular-situation.

*United States v. Mosley*, 743 F.3d 1317, 1328-29 (10th Cir. 2014)(internal quotation marks and citations omitted), *petition for cert*. *filed*, June 25, 2014.

Based on the record, the Court concludes that the level of force used by Officer Call was appropriate both to accomplish detention and to protect the officer's own safety. At the point when Defendant fled from Officer Call, sufficient reasonably objective suspicion of criminal activity existed for the Officer to initiate a *Terry* stop. Officer Call could not effect a stop without using force to stop Defendant from fleeing. After Defendant was tackled to the ground, he continued to actively resist by swinging his elbows at the Officer's body. Officer Call was alone, physically struggling with Defendant on the ground, without the prospect of assistance from other officers. Officer Call struck Defendant once in the side of the head after he refused to submit. Defendant continued to actively resist by swinging his elbows at the Officer. Only after Defendant was struck a second time did he become compliant. No further blows were struck.

In summary, because Officer Call had an objectively reasonable suspicion that Defendant Goodwin had committed, or was about to commit a crime, his stop and detention by Officer Call was justified under the *Terry* doctrine and did not violate the Fourth Amendment.

**B. Arrest**

"[A]lthough an arrest, unlike a *Terry* stop, requires probable cause, '[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" *Mosley*, 743 F.3d at 1329 (10th Cir. 2014)(quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Officer Call clearly identified himself as a police officer to Defendant and displayed his badge. After being tackled, Defendant actively resisted detention by swinging his elbows towards Officer Call's body. At that point, Officer Call had probable cause to arrest Defendant for the crime of assault against a police officer. Therefore, there was no unlawful arrest as Defendant asserts.

**C. Additional Incriminating Evidence**

Because the Court finds that Defendant Goodwin's December 3, 2012 arrest was lawful, his final position, that Officer Call exploited his December arrest to again arrest him on July 23, 2013, in order to obtain additional incriminating evidence, is without merit.[1]

---

[1] In his Motion to Suppress (Doc. #35) based on the July 23, 2013, traffic stop, Defendant asserts that his Fourth Amendment rights were violated when the vehicle he was driving was stopped "without reasonable suspicion that a traffic violation or some other crime had occurred or was about to occur." Mot. at 2. Defendant has offered no argument to support that assertion, and the facts do not support it. Defendant was driving a vehicle on a suspended drivers license, which gave officers sufficient basis for the stop.

### III. CONCLUSION

For the reasons set forth, Mr. Goodwin's Motions to Suppress (Docs. #39 and #35) are denied.

IT IS SO ORDERED.

DATED this 8th day of September, 2014.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT